UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY HOLBROOK, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TRIVAGO N.V., ROLF SCHRÖMGENS and AXEL HEFER,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Anthony Holbrook ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Trivago N.V. ("Trivago" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Trivago's American

Depositary Receipts ("ADRs"): (1) pursuant and/or traceable to Trivago's false and misleading Registration Statement and Prospectus, issued in connection with the Company's initial public offering on or about December 16, 2016 (the "IPO" or the "Offering"); and/or (2) on the open market between December 16, 2016 and October 26, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2. Trivago N.V. provides online hotel search platform. The Company, through its platform, offers price information, reviews, photos, booking, and other travel services. Trivago serves customers worldwide and is a subsidiary of Expedia, Inc.

3. Founded in 2005, the Company is headquartered in Düsseldorf, Germany and its ADRs trade on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "TRVG."

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company engaged in deceptive sales practices; (ii) such practices were nearly certain to bring Trivago under enhanced regulatory scrutiny; and (iii) as a result of the foregoing, Trivago's public statements were materially false and misleading at all relevant times.

5. On October 27, 2017, the U.K.'s Competition and Markets Authority ("CMA") announced that it was investigating the manner in which Trivago displays information to customers. Specifically, the CMA cited concerns about the clarity, accuracy and presentation of information on sites, which could mislead customers. The CMA said it would examine how

hotels were ranked, whether results were influenced by how much commission a hotel pays over the customer's requirements, the use of "pressure selling," and hidden charges.

6. On this news, Trivago's ADRs fell $0.36, or 4.54%, to close at $7.57 on October 27, 2017.

7. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa).

10. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Trivago transacts business in this District, and the Company's ADRs trade on the NASDAQ, located within this District.

11. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12. Plaintiff, as set forth in the attached Certification, acquired Trivago securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13. Defendant Trivago is headquartered in Düsseldorf, Germany with its principal executive offices located at Bennigsen-Platz 1, Düsseldorf 40474, Germany. Trivago's ADRs trade on the NASDAQ under the ticker symbol "TRVG."

14. Defendant Rolf Schrömgens ("Schrömgens") co-founded and has served at all relevant times as the Company's Chief Executive Officer ("CEO").

15. Defendant Axel Hefer ("Hefer") has served at all relevant times as the Company's Chief Financial Officer ("CFO").

16. The defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

17. Trivago and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18. Trivago N.V. provides online hotel search platform. The Company, through its platform, offers price information, reviews, photos, booking, and other travel services. Trivago serves customers worldwide.

19. On November 14, 2016, Trivago filed a registration statement on Form F-1 with the SEC in connection with the IPO. The registration statement was subsequently amended several times, with the final amended registration statement filed on Form F-1/A with the SEC on December 5, 2016 (collectively, the "Registration Statement").

20.     The Registration Statement contained a preliminary prospectus. The final prospectus (the "Prospectus") was filed with the SEC on December 16, 2016.

21.     On December 15, 2016, the SEC declared the Registration Statement effective.

22.     On or about December 16, 2016, the Company completed its IPO, issuing 26,110,118 shares and raising net proceeds of approximately $287,211,298.00.

**Materially False and Misleading Statements Issued During the Class Period**

23.     The Class Period begins on December 16, 2016, when Trivago filed its Prospectus with the SEC, which forms part of the Registration Statement.  In the Prospectus, the Company stated, in relevant part:

> **Code of Business Conduct and Ethics**
>
> We have adopted a Code of Business Conduct and Ethics which covers a broad range of matters including the handling of conflicts of interest, compliance issues and other corporate policies such as equal opportunity and non-discrimination standards.
>
> ***
>
> We believe that building and maintaining the trivago brand and clearly articulating our value proposition will drive both travelers and advertisers to our platform. We focus our marketing teams and spend towards building effective messaging to a broad audience. We take a data-driven, testing-based approach, where we use our proprietary tools and processes to measure and optimize performance end to end, starting with the pretesting of the creative and ending with the optimization of media spend. We have built in-house tools that capture data and calculate our return on investment on almost every element of our brand and performance marketing.
>
> We invest in brand marketing globally across a broad range of media, including TV marketing, video marketing (such as YouTube), radio and out-of-home advertising. The amount and nature of our marketing spend varies across our markets, depending on multiple factors including cost efficiency, local media dynamics, size of market and our existing brand presence in that market.
>
> We are active in online performance marketing channels, continuously optimizing each advertisement through dedicated tests. We also generate hotel content as a means of engaging with travelers, which is distributed online including via social media.

24. The Registration Statement was signed by Defendant Schrömgens.

25. In Trivago's Code of Business Conduct and Ethics, the Company stated, in relevant part:

> This Code of Business Conduct and Ethics ("Code of Ethics") reflects the commitment of trivago to conduct its business affairs in accordance with not only the requirements of law but also standards of ethical conduct that will maintain and foster trivago's reputation for honest and straightforward business dealings.
>
> ***
>
> Each Employee should endeavor to deal fairly with trivago's customers, service providers, suppliers, competitors and other Employees. No Employees should take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts, or any unfair dealing practice.
>
> ***
>
> Complying with the law is the foundation on which trivago's ethical standards are built. It is trivago's policy to be a good "corporate citizen." All Employees must comply with applicable laws, regulations, rules and regulatory orders applicable in the country, state and local jurisdictions where business is conducted, including anti-corruption laws, securities laws, antitrust laws and other fair competition laws.

26. On March 9, 2017, Trivago filed an annual report on Form 20-F with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2016 (the "2016 20-F"). For the quarter, Trivago reported net income of $320,000, or $0 per diluted share, on revenue of $182.36 million, compared to a net loss of $1.95 million, on revenue of $108.71 million for the same period in the prior year. For fiscal year 2016, Trivago reported a net loss of $56.10 million, or $0.24 per diluted share, on revenue of $834.74 million, compared to a net loss of $43.43 million, on revenue of $547.33 million for fiscal year 2015.

27. In the 2016 20-F, the Company stated, in relevant part:

***Code of Ethics***

6

> We have adopted a code of business conduct and ethics that applies to all of our employees, members of our senior management and members of our management board and supervisory board, including those members of our senior management responsible for financial reporting. Our code of ethics is posted on our company website at:http://ir.trivago.com/phoenix.zhtml?c=254450&p=irol-govHighlights. We will disclose any substantive amendments to the code of business conduct and ethics, or any waiver of its provisions, on our website. The reference to our website does not constitute incorporation by reference of the information contained at or available through our website.

28. The 2016 20-F incorporates the Company's Code of Business Conduct described *supra* in ¶ 25.

29. The 2016 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by the Individual Defendants, stating that the financial information contained in the 2016 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

30. On May 15, 2017, Trivago issued a press release and filed a Current Report on Form 6-K with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2017 6-K"). For the quarter, Trivago reported net income of $5.58 million, or $0.02 per diluted share, on revenue of $285.09 million, compared to a net loss of $110,000, on revenue of $175.78 million for the same period in the prior year.

31. On August 4, 2017, Trivago issued a press release and filed a Current Report on Form 6-K with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2017 (the "Q2 2017 6-K"). For the quarter, Trivago reported a net loss of $2.51 million, or $0.01 per diluted share, on revenue of $328.48 million, compared to a net loss of $56.25 million, on revenue of $202.19 million for the same period in the prior year.

32. On October 25, 2017, Trivago issued a press release and filed Current Report on Form 6-K with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2017 (the "Q3 2017 6-K"). For the quarter, Trivago reported a net

loss of $6.90 million, or $0.00 per diluted share, on revenue of $338.21 million, compared to a net loss of $1.45 million, on revenue of $275.37 million for the same period in the prior year.

33. The statements referenced in ¶¶ 23-32 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company engaged in deceptive sales practices; (ii) such practices were nearly certain to bring Trivago under enhanced regulatory scrutiny; and (iii) as a result of the foregoing, Trivago's public statements were materially false and misleading at all relevant times.

### The Truth Begins To Emerge

34. On October 27, 2017, the U.K.'s CMA announced that it was investigating the manner in which Trivago displays information to customers. Specifically, the CMA cited concerns about the clarity, accuracy and presentation of information on sites, which could mislead customers. The CMA said it would examine how hotels were ranked, whether results were influenced by how much commission a hotel pays over the customer's requirements, the use of "pressure selling," and hidden charges.

35. On this news, Trivago's ADRs fell $0.36, or 4.54%, to close at $7.57 on October 27, 2017.

36. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

37. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Trivago securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

38. The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Trivago securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Trivago or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

40. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

41. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Trivago;

- whether the Individual Defendants caused Trivago to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Trivago securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

42. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

43. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Trivago securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Trivago securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

44. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

45. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

46. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

48. During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions,

practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Trivago securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Trivago securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

49.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Trivago securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Trivago's finances and business prospects.

50.     By virtue of their positions at Trivago , defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made,

although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

51.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Trivago, the Individual Defendants had knowledge of the details of Trivago's internal affairs.

52.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Trivago. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Trivago's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Trivago securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Trivago's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Trivago securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

53.     During the Class Period, Trivago securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and

misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Trivago securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Trivago securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Trivago securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

54. By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

55. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

56. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57. During the Class Period, the Individual Defendants participated in the operation and management of Trivago, and conducted and participated, directly and indirectly, in the conduct of Trivago's business affairs. Because of their senior positions, they knew the adverse non-public information about Trivago's misstatement of income and expenses and false financial statements.

58. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Trivago's financial condition and results of operations, and to correct promptly any public statements issued by Trivago which had become materially false or misleading.

59. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Trivago disseminated in the marketplace during the Class Period concerning Trivago's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Trivago to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Trivago within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Trivago securities.

60. Each of the Individual Defendants, therefore, acted as a controlling person of Trivago. By reason of their senior management positions and/or being directors of Trivago, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Trivago to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Trivago and possessed the

power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

61. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Trivago.

## COUNT III

**(Violations of Section 11 of The Securities Act Against All Defendants)**

62. Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

63. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against the Individual Defendants.

64. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

65. Trivago is the registrant for the IPO. Individual Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

66. As issuer of the shares, Trivago is strictly liable to Plaintiff and the Class for the misstatements and omissions.

67. None of the Individual Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

68. By reasons of the conduct herein alleged, each Individual Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

69. Plaintiff acquired Trivago securities pursuant and/or traceable to the Registration Statement for the IPO.

70. Plaintiff and the Class have sustained damages. The value of Trivago securities has declined substantially subsequent to and due to the Individual Defendants' violations.

## COUNT IV

**(Violations of Section 15 of The Securities Act Against the Individual Defendants)**

71. Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

72. This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

73. Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Trivago within the meaning of Section 15 of the Securities Act. Individual Defendants had the power and influence and exercised the same to cause Trivago to engage in the acts described herein.

74. Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

75. By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: October 30, 2017

Respectfully submitted,

**POMERANTZ LLP**

*/s/Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
   ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**

>Peretz Bronstein
>60 East 42nd Street, Suite 4600
>New York, NY 10165
>(212) 697-6484
>Email:  peretz@bgandg.com
>
>*Attorneys for Plaintiff*